UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SCOTTY L. WALL,

               Plaintiff,                        **DECISION AND ORDER**

        v.                              6:19-CV-06387 EAW

CHARTER COMMUNICATIONS, INC.,
f/k/a TIME WARNER CABLE, INC.,
 d/b/a SPECTRUM,

               Defendant.
_____

## <u>INTRODUCTION</u>

Plaintiff Scotty L. Wall ("Plaintiff") filed this action on May 23, 2019, against Charter Communications, Inc., f/k/a Time Warner Cable, Inc., d/b/a Spectrum ("Defendant") alleging that Defendant discriminated against him in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.; Title VII, of the 1964 Civil Rights Act ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq*; and the New York State Human Rights Law ("NYSHRL")*.*  (Dkt. 1).  Pending before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Dkt. 57). For the reasons explained below, Defendant's motion for summary judgment is granted in part and denied in part.

## FACTUAL BACKGROUND

The following facts are taken from Defendant's Local Rule 56.1 Statement of Undisputed Material Facts (Dkt. 59), Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Material Facts (Dkt. 68), Plaintiff's Rule 56 Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment (Dkt. 69),[1] and the exhibits submitted by the parties. Unless otherwise noted, the facts set forth below are undisputed.

Plaintiff is a 57-year-old African American male who began employment with Time Warner Cable, now known as Charter Communications, in March of 1992. (Dkt. 59 at ¶ 15; Dkt. 68 at ¶ 15; Dkt. 69 at ¶ 7). Throughout his career with Defendant, Plaintiff was awarded numerous promotions and received multiple raises. (Dkt. 59 at ¶ 17; Dkt. 68 at ¶ 17; Dkt. 69 at ¶ 12). Before he was terminated, Plaintiff worked as a Retail Sales Supervisor, a position he held since 2007, and for which he was responsible for supervising multiple stores in western New York State. (Dkt. 59 at ¶¶ 17, 18, 19; Dkt. 68 at ¶¶ 17, 18, 19; Dkt. 69 at ¶¶ 9, 10). Part of Plaintiff's responsibilities included

---

[1] The Court notes that on the instant motion, Plaintiff, in opposing summary judgment, fails to specifically identify the portions of the record upon which he relies in disputing Defendant's properly supported Statement of Facts, and for the most part, merely generally refers to his own affidavit. Moreover, in Plaintiff's own Rule 56 Statement of Material Facts (Dkt. 69), he simply lists approximately 200 paragraphs containing numerous allegations of fact without referencing any supporting evidence for each of his factual allegations. As such, to the extent they are not sufficiently disputed by Plaintiff's Responding Statement of Facts, the properly supported Defendant's Statement of Facts are deemed admitted. *Saleh v. United States Citizenship & Immigr. Servs.*, No. 18-CV-1347F, 2022 WL 1300545, at *9 (W.D.N.Y. Apr. 29, 2022).

interviewing employment applicants, disciplining employees, and providing performance evaluations. (Dkt. 59 at ¶ 20; Dkt. 68 at ¶ 20). The retail stores for which Plaintiff had managerial oversight responsibilities changed throughout his tenure with Defendant. (Dkt. 59 at ¶ 44; Dkt. 68 at ¶ 44). At some point, Plaintiff raised concerns to a manager about not having a lead report assigned to him and having more direct reports than other retail sales supervisors. (Dkt. 59 at ¶¶ 45, 46; Dkt. 68 at ¶¶ 45, 46). While Plaintiff's request for a commensurate pay raise was denied, changes were made to make the number of direct reports more evenly distributed among retail sales supervisors in response to his complaint. (Dkt. 59 at ¶¶ 45, 46; Dkt. 68 at ¶¶ 45, 46).

In 2017, Plaintiff reported to Devin Perkins, a white male, who worked as an area manager for the Rochester, New York area. (Dkt. 59 at ¶ 23; Dkt. 68 at ¶ 23; Dkt. 69 at ¶ 10). Both Plaintiff and Devin Perkins reported to Nicole Averill, who was the senior retail manager for Defendant's stores in the Western New York area. (Dkt. 59 at ¶ 24; Dkt. 68 at ¶ 24; Dkt. 69 at ¶ 11). Plaintiff's Human Resources business partner was Meagan Miles, who served as his point of contact for any human resources-related issues. (Dkt. 59 at ¶ 27; Dkt. 68 at ¶ 27; Dkt. 69 at ¶ 112).

In 2004, while employed by Defendant, Plaintiff was diagnosed with a brain tumor. (Dkt. 59 at ¶ 34; Dkt. 68 at ¶ 34; Dkt. 69 at ¶ 139). Plaintiff's request for 12 weeks of leave was granted. (Dkt. 59 at ¶ 35; Dkt. 68 at ¶ 35; Dkt. 69 at ¶ 139). In April 2016, Plaintiff's brain tumor returned and he was granted additional leave. (Dkt. 59 at ¶ 39; Dkt. 68 at ¶ 39; Dkt. 69 at ¶ 141). Plaintiff returned to work in September of 2016

to his previous job territory.  (Dkt. 59 at ¶ 41; Dkt. 68 at ¶ 41; Dkt. 69 at ¶ 143).  When Plaintiff returned from medical leave, he was told that he had to turn in his company vehicle.  (Dkt. 59 at ¶ 64; Dkt. 68 at ¶ 64; Dkt. 69 at ¶ 144).  Plaintiff only initially received a company vehicle after complaining that three of his white counterparts had company vehicles and he did not.  (Dkt. 59 at ¶ 62; Dkt. 68 at ¶ 62; Dkt. 69 at ¶ 148). When he requested an accommodation to keep the vehicle for an extra day, the request was denied, even though the other employees with company vehicles were not given a specific time to turn it in.  (Dkt. 59 at ¶ 66; Dkt. 68 at ¶ 66; Dkt. 69 at ¶¶ 145, 147, 155). Plaintiff's request for a rental car, which was permitted for a counterpart who was younger and not disabled, was denied.  (Dkt. 59 at ¶ 74; Dkt. 68 at ¶¶ 74, 76, 77).

Shortly after Plaintiff returned from leave, his base store was changed from East Rochester, New York, to one further away in Batavia, New York.  (Dkt. 59 at ¶ 53; Dkt. 68 at ¶ 53; Dkt. 69 at ¶ 160).  Because of his ongoing health issues, in December of 2016, Plaintiff requested to use accrued time off that he was going to lose if not used.  (Dkt. 59 at ¶ 78; Dkt. 68 at ¶ 78; Dkt. 69 at ¶¶ 164, 165).  Plaintiff's request was initially denied but when he made clear that his health issues were part of the reason for the request, Devin Perkins allowed Plaintiff to work from home, even though Plaintiff was not aware of any of his younger white peers having to work from home during requested days off. (Dkt. 59 at ¶¶ 79, 80, 81; Dkt. 68 at ¶¶ 79, 80, 81; Dkt. 69 at ¶¶ 166, 167, 168).

Under Defendant's Workplace Violence Prevention Policy, Defendant had "zero tolerance for aggressive behavior, violence, threats, harassment, intimidation, and/or

weapons." (Dkt. 59 at ¶ 2; Dkt. 68 at ¶ 2; Dkt. 60-4). The policy requires employees who observe "violent conduct in the workplace" or "believe[] a credible threat of such behavior exists" to "immediately report the conduct to their supervisor, Human Resources, or a Security representative." (Dkt. 59 at ¶ 3; Dkt. 68 at ¶ 3; Dkt. 60-4 at ¶ 4.1). A manager or supervisor "must report workplace violence instances immediately either to Security or Human Resources." (Dkt. 59 at ¶ 5; Dkt. 68 at ¶ 5; Dkt. 60-4 at ¶ 4.4). "**A manager's failure to appropriately** respond and report a workplace violence issue may result in corrective action, up to and including termination." (Dkt. 59 at ¶ 5; Dkt. 68 at ¶ 5; Dkt. 60-4 at ¶ 4.4 (emphasis in original)). In addition, Defendant's Standards of Business Policy has a reporting requirement for supervisors. (Dkt. 59 at ¶ 12; Dkt. 68 at ¶ 12; Dkt. 60-3 at 4, 6).

As noted, one of the stores Plaintiff was responsible for was the East Rochester location. (Dkt. 59 at ¶ 50; Dkt. 68 at ¶ 50). There were three retail sales specialists employed by this location who directly reported to Plaintiff in January 2017: Sally Peer-Malone, Caitlin Allen, and Eric Davis. (Dkt. 59 at ¶ 51; Dkt. 68 at ¶ 51; Dkt. 69 at ¶ 159).

On January 4, 2017, when Plaintiff was in a meeting with one of his direct reports, Bridget Barber, she mentioned that she had heard "something about Eric Davis" and "a knife" from Caitlin Allen and Sally Peer-Malone. (Dkt. 59 at ¶ 96; Dkt. 68 at ¶ 96; Dkt. 69 at ¶ 26). Ms. Barber did not report any threat of violence, safety concerns, or that the knife was used as a weapon. (Dkt. 69 at ¶¶ 26, 27, 29). Based on this conversation,

Plaintiff then requested that both Caitlin Allen and Sally Peer-Malone speak to him that same day.  (Dkt. 69 at ¶¶ 30, 31).  Plaintiff first met with Caitlin Allen and then with Sally Peer-Malone at around 6:00 p.m. that same day, and they reported to Plaintiff that they had seen Eric Davis carrying and using a knife and that he had rubbed it against his arm in a manner that made Caitlin Allen uncomfortable, but neither said that they felt threatened.  (Dkt. 59 at ¶ 97; Dkt. 69 at ¶¶ 37, 38, 43).  Plaintiff's impression was that the incident with the knife was not a recent event.  (Dkt. 69 at ¶ 39).  Plaintiff's conversation with Caitlin Allen and Sally Peer-Malone did not conclude until after the store was closed for the evening and he let them know he would be reporting it to a supervisor the following morning.  (*Id.* at ¶¶ 35. 49, 50).  Neither Caitlin Allen nor Sally Peer-Malone expressed any concern or urgency with Plaintiff's plan.  (*Id.* at ¶¶ 35, 49, 50).

Plaintiff reported Eric Davis' knife possession to his manager, Devin Perkins, the next morning, January 5, 2017, as he drove into work.  (Dkt. 59 at ¶ 99; Dkt. 68 at ¶ 99; Dkt. 69 at ¶ 54).  Plaintiff was aware of previous complaints involving aggressive behavior by Eric Davis from customers and employees, but nothing that he would consider workplace violence or that warranted escalation.  (Dkt. 59 at ¶ 103; Dkt. 68 at ¶ 103; Dkt. 69 at ¶ 119).  Devin Perkins then reported Plaintiff's communication to Nicole Averill and Meagan Miles.  (Dkt. 59 at ¶ 104).  In turn, Nicole Averill reported it to her supervisor.  (Dkt. 59 at ¶ 105).

After Nicole Averill was informed, she began an investigation into the claim.  (Dkt. 59 at ¶ 106).  As part of the investigation, Eric Davis, Sally Peer-Malone, Caitlin

Allen, and Plaintiff were interviewed.  (Dkt. 59 at ¶ 109; Dkt. 69 at ¶¶ 63, 64).  Eric Davis admitted bringing the knife to work and described it as a "switch knife."  (Dkt. 59 at ¶ 110).  During their interviews, Nicole Averill alleges that Sally Peer-Malone and Caitlin Allen advised her that they had told Plaintiff about Eric Davis using the knife to point at employees.  (Dkt. 59 at ¶ 113).  During a conference call on January 5, 2017, with Meagan Miles, Caitlin Allen, Sally Peer-Malone, Devin Perkins, and Plaintiff, Sally Peer-Malone stated, "Devin, I told you about Eric and the knife."  (Dkt. 59 at ¶ 135; Dkt. 68 at ¶ 135; Dkt. 69 at ¶¶ 64, 107).

As a result of the investigation by Nicole Averill and Meagan Miles, Eric Davis was terminated the same day for violating the Workplace Violence Prevention Policy. (Dkt. 59 at ¶ 118).  Nicole Averill also investigated Plaintiff's timeliness in reporting Eric Davis' conduct.  (*Id.* at ¶ 124; Dkt. 68 at ¶ 124; Dkt. 69 at ¶ 111).  On January 17, 2017, Nicole Averill spoke to Plaintiff by phone about his alleged lack of timeliness in reporting.  (Dkt. 59 at ¶ 123).  She then made a request to terminate Plaintiff's employment, concluding that he violated the Workplace Violence Prevention Policy by reporting the incident the following day, which did not constitute an "immediate" report as required by the policy.  (Dkt. 59 at ¶ 127; Dkt. 69 at ¶ 100).  Nicole Averill also alleged that Plaintiff violated the Standards of Business Conduct by his failure to report Eric Davis' violation of the Workplace Violence Prevention Policy.  (Dkt. 59 at ¶ 128). In late January 2017, Plaintiff's managers, including Devin Perkins and Meagan Miles, informed him he was being terminated.  (Dkt. 59 at ¶ 131; Dkt. 68 at ¶ 131).

Plaintiff later learned more information from Sally Peer-Malone that she had told Devin Perkins in November or December of 2016 about Eric Davis having a knife.  (Dkt. 59 at ¶ 136; Dkt. 68 at ¶ 13; Dkt. 69 at ¶ 66).  Nicole Averill contends that she was not aware of Sally Peer-Malone's report to Devin Perkins of the knife, but Plaintiff disputes that fact.  (Dkt. 59 at ¶ 139; Dkt. 68 at ¶ 139; Dkt. 69 at ¶ 102).  Devin Perkins was not fired, disciplined, or investigated about his prior knowledge of Eric Davis and the knife. (Dkt. 69 at ¶ 21).

## PROCEDURAL BACKGROUND

Plaintiff filed a Charge of Employment Discrimination with the New York State Division of Human Rights on or about May 31, 2017, which was duly filed with the United States Equal Employment Opportunity Commission ("EEOC").  (Dkt. 1-1).  On February 22, 2019, Plaintiff received a "Right to Sue Letter" from the EEOC (Dkt. 1-3) and he commenced the instant action on May 23, 2019 (Dkt. 1).  In his complaint, Plaintiff asserts a claim for discrimination on the basis of disability (*id.* at ¶¶ 38-43), race (*id.* at ¶¶ 44-45), and age (*id.* at ¶¶ 46-47).

Defendant filed its motion for summary judgment on September 10, 2021.  (Dkt. 57).  Plaintiff filed his response on November 8, 2021.  (Dkt. 66).  On November 22, 2021, Defendant filed its reply.  (Dkt. 70).

**DISCUSSION**

I.   **Summary Judgment Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial."  *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts[] and may not rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).  Specifically, the non-moving party "must come forward with

specific evidence demonstrating the existence of a genuine dispute of material fact."
*Brown*, 654 F.3d at 358.  Indeed, "the mere existence of some alleged factual dispute
between the parties will not defeat an otherwise properly supported motion for summary
judgment; the requirement is that there be no genuine issue of material fact." *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The Second Circuit has "repeatedly expressed the need for caution about granting
summary judgment" for an employer in discrimination cases where "the merits turn on a
dispute as to the [defendant's] intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir.
2008); *Anderson v. N.Y.C. Health & Hosps. Corp.*, No. 16-CV-1051(GBD)(KFP), 2020
WL 2866960, at *10 (S.D.N.Y. Mar. 2, 2020) ("In the context of employment
discrimination lawsuits, courts must be 'especially cautious' in granting summary
judgment 'because the employer's intent is often at issue and careful scrutiny may reveal
circumstantial evidence supporting an inference of discrimination.'" (quoting *Belfi v.
Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999)), *adopted*, 2020 WL 1528101 (S.D.N.Y.
Mar. 31, 2020).   "Though caution must be exercised in granting summary judgment
where motive is genuinely in issue, summary judgment remains available for the
dismissal of discrimination claims in cases lacking genuine issues of material fact."
*McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997) (citations omitted).

## II.   Plaintiff's Employment Discrimination Claims Under Title VII, ADA, ADEA, and NYSHRL

### A.   Legal Standard

Plaintiff alleges that he was discriminated against based on his age, race and disability related to his brain tumor.  As a threshold matter, the Court notes that while Plaintiff's memorandum of law (Dkt. 66) appears to suggest that Plaintiff is asserting a retaliation claim, no such claim appears in his complaint.  Moreover, Plaintiff's Right to Sue letter (Dkt. 1-1 at 2), does not reflect that he filed a claim of retaliation. Accordingly, while some of Plaintiff's arguments relating to retaliation may be generally relevant to the claims he has asserted in his complaint, a claim for retaliation is not before the Court and will not be addressed.  *Whitt v. Kaleida Health*, 298 F. Supp. 3d 558, 568 (W.D.N.Y. 2018) ("Raising a new claim for the first time in opposition to summary judgment is inappropriate.").

On a motion for summary judgment, discrimination claims under Title VII, the ADEA, the ADA, and the NYSHRL are typically evaluated under the burden-shifting analysis described in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  *Szewczyk v. Saakian*, No. 21-672, 2022 WL 2037196, at *1 (2d Cir. June 7, 2022) ("Title VII, ADEA, and NYSHRL claims are evaluated under the *McDonnell Douglas* framework."); *Voss v. McDonough,* 17-CV-09015 (PMH), 2021 WL 4199941, at *9 (S.D.N.Y. Sept. 15, 2021) (same).  Plaintiff must initially establish a *prima facie* case of discrimination by establishing that: (1) he was within the protected class; (2) he was qualified for the

position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 253 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013).  If a plaintiff establishes a *prima facie* case, the burden then shifts to the employer to articulate "some legitimate nondiscriminatory reason" for the disparate treatment. *McDonnell Douglas*, 411 U.S. at 802.  If the employer articulates a sufficient reason, the burden shifts back to the plaintiff to prove that the employer's reason "was in fact pretext" for discrimination. *Id.* at 804; *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015).

For his race-based claim, Plaintiff is "not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that a prohibited factor was at least one of the 'motivating' factors for the decision." *Smith v. New York and Presbyterian Hosp.*, 440 F. Supp. 3d 303, 328 (S.D.N.Y. 2020) (internal quotations and citation omitted).  By contrast, for his age-based related claims, Plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (quoting *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 180 (2009)).  The same but-for standard applies to Plaintiff's disability-related claims.[2]

---

[2]      With respect to age discrimination claims under the NYSHRL, the Second Circuit has "assumed without deciding that 'but for' causation is also required," noting that the

*Natofsky v. City of N.Y.,* 921 F.3d 337, 348 (2d Cir. 2019) (requiring plaintiff to "prove that [disability] discrimination was the but-for cause of any adverse employment action.").

Defendant does not contest that Plaintiff meets the first three elements of a *prima facie* case of race, age, and disability discrimination for purposes of this motion—namely, that as an African American man over 40 years old with a disability arising from his brain tumor, he falls within protected classes; that he was qualified for his position; and, by virtue of his termination, that he was subject to an adverse employment action. Rather, Defendant contends that the evidence does not give rise to an inference of

---

issue has not been definitively resolved by New York courts. *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018) (citing *Gorzynski*, 596 F.3d at 105 n.6 and *DeKenipp v. State*, 97 A.D.3d 1068, 1070 (2012)). The Second Circuit has similarly not resolved whether the "but for" causation standard applies to NYSHRL claims alleging disability discrimination. *Ragin v. Riverbay Corp.*, No. 20-2233-CV, 2021 WL 4057196, at *3 n.2 (2d Cir. Sept. 7, 2021) ("[W]e note that we have not yet determined whether 'but for' causation is the proper standard for claims of disability discrimination under the NYSHRL or whether, for instance, Title VII's lower 'mixed-motive' test would apply instead, and we decline to do so today."). Because Plaintiff's disability claims survive under the more exacting but-for test, the Court does not resolve the question as to the applicable standard under the NYSHRL for purposes of this Decision and Order. With respect to any age discrimination claims asserted under state law, Defendant contends that the but-for causation standard applies (Dkt. 58 at 19), and Plaintiff makes no effort to dispute that contention—thus waiving any argument in that regard. Moreover, the Court seriously questions whether Plaintiff has even asserted an age discrimination claim under state law, as the complaint is far from a model of clarity in that regard. (*See* Dkt. 1). In any event, the Court's conclusion that no genuine dispute of material fact exists so as to justify denying summary judgment in favor of Defendant on Plaintiff's age discrimination claim under state law would likely be the same even if the less demanding causation standard applied.

employment discrimination, and instead shows that Plaintiff was terminated for company policies having nothing to do with age, race, or disability.  It further argues that Plaintiff cannot establish pretext.  The Court will address each claim separately.

### B.   *Prima Facie* Case

In establishing a *prima facie* case, "the burden placed on Plaintiff at this stage is '*de minimis*' and requires only that the plaintiff 'proffer[] admissible evidence show[ing] circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive.'"  *Benoit v. Sikorsy Aircraft*, No. 3:20-CV-00717 (SVN), 2022 WL 3043240, at *5 (D. Conn. Aug. 2, 2022) (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir. 1995)).  "With respect to the fourth *prima facie* element, 'there is no unbending or rigid rule about what circumstances allow an inference of discrimination when there is an adverse employment decision.'"  *Watkins v. City of Waterbury Bd. of Educ.*, No. 3:19-CV-00593 (SVN), 2022 WL 3347218, at *9 (D. Conn. Aug. 12, 2022) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)).  Instead, "[t]he necessary inference may be derived from a variety of circumstances, including 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."  *Lopez v. White Plains Hosp.*, No. 19-CV-6263 (KMK), 2022 WL 1004188, at *8 (S.D.N.Y. Mar. 30, 2022) (quoting *Detouche v. JTR Transp. Corp.*, No. 17-CV-7719, 2020 WL 7364116, at *10 (S.D.N.Y. Dec. 14, 2020));

- 14 -

*Schneider v. Wal-Mart Stores, Inc.*, No. 16-cv-2010 (NSR), 2019 WL 294309, at *4 (S.D.N.Y Jan. 23, 2019) ("Evidence leading to the inference of discrimination may include discriminatory comments made by the defendant relating to a disability, failure to take actions required for a disabled employee to return to work, or preferential treatment of employees similarly situated to the plaintiff who are not members of the plaintiff's protected class.").

"A showing of disparate treatment – that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group – is a recognized method of raising an inference of discrimination for the purposes of making out a *prima facie* case." *Moore v. Am. Fed'n of State, Cnty. & Mun. Emps. Loc. 1095*, No. 17-CV-0704LJV, 2022 WL 262347, at *10 (W.D.N.Y. Jan. 28, 2022) (citation and quotation omitted), *report and recommendation adopted*, No. 17-CV-704-LJV-MWP, 2022 WL 1497959 (W.D.N.Y. May 12, 2022); *Almodovar v. Cross Fin. Corp.*, No. 3:20-CV-01179 (JCH), 2022 WL 1810132, at *5 (D. Conn. June 2, 2022) ("A plaintiff may [also] raise such an inference at this stage by showing that the employer subjected her to disparate treatment by treating her less favorably than a similarly situated employee outside [her] protected group." (quotation and citation omitted)).  To demonstrate that employees are similarly situated, they must be subject to the same discipline standards and have engaged in similar conduct.  *Moore*, 2022 WL 262347, at *10.  "The standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases

are identical. In other words, the comparator must be similarly situated to the plaintiff in all material respects." *Id.*; *Perkins v. United States Dep't of the Treasury*, No. 18-CV-08911 (NSR), 2022 WL 19772, at *6 (S.D.N.Y. Jan. 3, 2022) ("The similarly situated individuals must be 'similarly situated in all material respects,' including 'having engaged in conduct similar to the plaintiff.'" (quoting *Blasi v. N.Y. City Bd. of Educ.*, Nos. 00-CV-5320 (RRM)(MDG), 03-CV-3836 (RRM)(MDG), 2012 WL 3307227, at *14 (E.D.N.Y. Mar. 12, 2012)). "In the Second Circuit, whether or not co-employees report to the same supervisor is an important factor in determining whether two employees are subject to the same workplace standards for purposes of finding them similarly situated." *Diggs v. Niagara Mohawk Power Corp.*, No. 114CV244(GLS/CFH), 2016 WL 1465402, at *4 (N.D.N.Y. Apr. 14, 2016), *aff'd*, 691 F. App'x 41 (2d Cir. 2017).

### 1.    Race Discrimination

The Court finds that Plaintiff has met his burden of establishing the requisite elements of a *prima facie* case of race discrimination against Defendant. While there may not be any direct evidence of discrimination on the basis of Plaintiff's race, Plaintiff has sufficiently alleged that Devin Perkins, a white male, was not disciplined or terminated for conduct that violated the same policy Plaintiff is alleged to have violated. Indeed, the allegations against Devin Parker arise from his receipt of the same exact complaint about the same employee. Moreover, Devin Perkins is alleged to have learned of Eric Davis having a knife months before Plaintiff did and Devin Perkins did not report

the conduct at all, whereas Plaintiff reported the information the very next morning, making Devin Perkins' alleged conduct more egregious than that of Plaintiff.

Defendant argues that Devin Perkins cannot be considered a comparator to Plaintiff because Defendant was not aware of Devin Perkins' alleged policy violation. *See Dinkins v. Suffolk Transp. Serv., Inc.*, No. 07-CV-3567 (JFB)(AKT), 2010 WL 2816624, at *10 (E.D.N.Y. 2010) ("An employee who allegedly engaged in misconduct comparable to the plaintiff's is not similarly situated to the plaintiff when the employer is unaware of what the comparator employee supposedly did.").   In support of this argument, Defendant relies on Nicole Averill's deposition testimony indicating that she was not aware Devin Perkins had been informed about Eric Davis' possession of a knife at work.  (*See* Dkt. 58 at 20-21).  But Plaintiff contends and Defendant does not dispute for purposes of this motion that on a call with Meagan Miles on January 5, 2017, Sally Peer-Malone expressly stated that she had told Devin Perkins about the knife.  Moreover, Devin Perkins—who presumably knew that he had failed to report Sally Peer-Malone's complaint—was involved in the investigation of Plaintiff's alleged untimely report, reported his findings to Nicole Averill as part of the investigation, and attended the meeting with Meagan Miles where Plaintiff was told he was being terminated.  (Dkt. 59 at ¶¶ 121, 122, 131).  Accordingly, Defendant's reliance on Nicole Averill's deposition testimony alone that she was not aware of Sally Peer-Malone's complaint to Devin Perkins does not resolve this genuine issue of material fact as to whether Defendant was

aware of Devin Perkins' comparable misconduct and whether Devin Perkins is therefore similarly situated to Plaintiff.

Moreover, in addition to his claim of being disparately treated from Devin Perkins, Plaintiff points to other evidence where similarly situated white coworkers were given smaller teams, less stores, and less responsibility than Plaintiff and yet, were provided help with lower level of leadership to support them in their daily operations, whereas Plaintiff was not.  He contends that his white counterparts were given company cars even though Plaintiff had the greatest number of stores and the greatest number of direct reports, and that he only received a company vehicle when he complained about the disparity.

Taking these allegations together, the Court concludes that a reasonable jury could conclude that the circumstances support an inference of discrimination, and thus for purposes of this motion Plaintiff has established a *prima facie* case of race discrimination based on his termination.

### 2.    Disability Discrimination

The Court turns next to Plaintiff's disability discrimination claims.  Plaintiff has alleged both a failure-to-accommodate claim and that he was discriminated against on the basis of his disability when he was terminated.  (*See* Dkt. 1 at ¶¶ 42, 43).

### a.    Failure to Accommodate

"To plead a failure-to-accommodate claim, a plaintiff must allege that '(1) [he] is a person with a disability under the meaning of the ADA; (2) an employer covered by the

- 18 -

statute had notice of [his] disability; (3) with reasonable accommodation, [he] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 18 (2d Cir. 2015) (quoting *McMillan v. City of N.Y.*, 711 F.3d 120, 125-26 (2d Cir. 2013)). In addition, "the ADA envisions an interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 99 (2d Cir. 2009) (quotations omitted). "An employer engages in an interactive process by, for example, meeting with the employee who requests an accommodation, requesting information about the condition and what limitations the employee has, asking the employee what he or she specifically wants, showing some sign of having considered the employee's request, and offering and discussing available alternatives when the request is too burdensome." *Sheng v. M&TBank Corp.*, 848 F.3d 78, 87 n.3 (2d Cir. 2017).

Here, neither Plaintiff's complaint nor his submissions on the instant motion make precisely clear the nature of a purported failure to accommodate claim. As an initial matter, it is undisputed that Plaintiff's requests to take medical leave for his brain tumor were approved by Defendant and cannot form the basis of a failure to accommodate. *Talbott-Serrano v. Iona College,* No. 21-CV-1055 (CS), 2022 WL 3718346, at *13 (S.D.N.Y. Aug. 29, 2022) (holding that failure to accommodate claim was not stated where defendant "granted Plaintiff a plainly reasonable accommodation").

- 19 -

To the extent that Plaintiff's failure to accommodate claim arises from his allegations that he was required to turn in his company car, Plaintiff has not alleged that this company directive was related to his disability.  Instead, Plaintiff's allegations suggest that all supervisors had to turn in company vehicles.  Nor has Plaintiff alleged any connection between his disability and a need for a company car to perform the essential functions of his position.

Similarly, to the extent Plaintiff attempts to allege a failure to accommodate claim arising from his request to take accrued time off, any such claim fails.  While Plaintiff alleges that his initial request to take time off was denied, he acknowledges that after further discussion with his manager wherein Plaintiff advised that the time off request related to his ongoing health issues, Defendant agreed to allow Plaintiff to work from home.  Plaintiff does not dispute that this accommodation was accepted by Plaintiff and not pursued further.  *Martinez v. Mount Sinai Hosp.*, 670 F. App'x 735, 736 (2d Cir. 2016) ("[Defendant] engaged in the required 'interactive process' with [Plaintiff] . . . and it ultimately offered her a reasonable accommodation—one that she accepted, no less— thereby entitling [Defendant] to summary judgment."); *Atkins v. Walmart, Inc.*, No. 6:20-CV-1217 (ATB), 2022 WL 1320300, at *17 (N.D.N.Y. May 2, 2022) ("An employee who is responsible for the breakdown of that interactive process may not recover for a failure to accommodate." (quoting *Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 946 (2d Cir. 2008)); *Fasanello v. United Nations Int'l Sch.*, No. 1:19-CV-5281-GHW, 2022 WL 861555, at *21 (S.D.N.Y. Mar. 23, 2022) ("However, while

Defendant's alleged failure to hold a good faith constructive dialogue regarding Plaintiff's accommodation requests may suggest discriminatory intent, it does not preclude summary judgment on Plaintiff's failure to accommodate claim where, as here, there is no evidence that any of Plaintiff's accommodation requests were refused.").

As a result, Defendant's motion for summary judgment on Plaintiff's failure to accommodate claim is granted.

### b.    Termination on the Basis of Disability

Conversely, the Court finds that a rational jury could conclude that Plaintiff has established the requisite elements of a *prima facie* case of discrimination on the basis of disability arising from his termination.

As with Plaintiff's race-related claim, Plaintiff alleges that his disability status resulted in him being treated differently for the same conduct as Devin Perkins, who is not similarly disabled.  And in addition to the disparate treatment alleged, Plaintiff contends that upon his return from disability leave, he was treated less favorably than he had been previously.  He points to the fact that shortly after returning to work, he was transferred from the East Rochester store to the store furthest away in Batavia, contemporaneous with having to return his company vehicle and being denied the use of a rental car.  He also suggests that being required to work from home following the denial of his request to use his accrued leave time for his ongoing health issues is evidence of disability-related discrimination.  While these facts may not be sufficient to support a standalone failure to accommodate claim, when coupled with the disparate treatment

alleged and temporal proximity to a return from disability leave, the Court concludes that the sequence of events support a finding of a *prima facie* case of disability-related discrimination based on Plaintiff's termination.

### 3. Age Discrimination

Unlike Plaintiff's race and disability related claims, no rational jury could conclude that Plaintiff has met his burden of establishing a *prima facie* case of age discrimination, and as discussed further below, alternatively any such *prima facie* case is so weak that it ultimately fails under the third step of the *McDonnell Douglas* test.

Unlike the race and disability claims, Plaintiff essentially relies solely on Devin Perkins' status as a comparator to support an inference of discrimination. However, as noted above, Devin Perkins also falls outside Plaintiff's protected classifications related to race and disability, and therefore relying solely on Devin Perkins' comparator status to draw an inference of age discrimination does not present a particularly strong argument. This is particularly the case where the higher but-for causation standard applies.

Moreover, other than the alleged disparate treatment, Plaintiff has not set forth any additional evidence to support a conclusion that Plaintiff's age was the "but for" cause of his termination other than his own subjective beliefs, which are insufficient to sustain his claim. *Serrano*, 2022 WL 3718346, at *9 ("Courts must 'carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture.'" (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999)); *Boncoeur v. Haverstraw-Stony Point Cent. Sch. Dist.*, No. 20-

- 22 -

CV-10923 (KMK), 2022 WL 845770, at *8 (S.D.N.Y. Mar. 22, 2022) ("[A] plaintiff's feelings and perceptions of being discriminated against are not evidence of discrimination." (quotation and citation omitted)). Plaintiff cites to a meeting in January 2017, to discuss the rollout of new products, where one of Plaintiff's peers shouted to Plaintiff and other older employees, "Yo, you gotta LIBERATE yo self." Plaintiff contends that despite management witnessing the incident, none of them did or said anything in response to the comment. Not only was this statement not alleged to have been made by a decision-maker, but the statement is not clearly degrading or invidious age-based commentary.[3] As a result, the Court concludes that based on this thin evidence—namely a stray remark by a co-worker during an unrelated meeting and reliance on Devin Perkins as a comparator for purposes of age—a reasonable jury would not be able to conclude that the termination of Plaintiff's employment occurred under circumstances giving rise to an inference of age discrimination. *See generally Nowlin v. Mount Sinai Health Sys.*, No. 20 CIV. 2470 (JPC), 2022 WL 992829, at *12 (S.D.N.Y. Mar. 31, 2022) ("Stray remarks do not establish a *prima facie* case of discrimination."); *Kaplan v. Multimedia Ent., Inc.*, No. 02-CV-00447C(F), 2005 WL 2837561, at *8

---

[3] "In determining whether a remark is probative [of discriminatory intent], [district courts] have considered four factors: (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharms.*, Inc., 616 F.3d 134, 149 (2d Cir. 2010). Here, while the remark in question was made close in time to Plaintiff's termination, as explained, it was made by a coworker, was not clearly discriminatory, and was wholly unrelated to the decision-making process.

(W.D.N.Y. Oct. 27, 2005) ("Stray remarks in the workplace, by themselves, without a demonstrated nexus to the complained-of personnel action will not defeat an otherwise well-founded motion for summary judgment."), *aff'd*, 199 F. App'x 54 (2d Cir. 2006).

### C.    Legitimate Nondiscriminatory Reason

Next Defendant contends that even if Plaintiff could establish a *prima facie* claim of race, age, and disability discrimination, his claims are subject to dismissal because Defendant had a legitimate nondiscriminatory reason for Plaintiff's termination—specifically, Plaintiff's violation of a company policy intended to preserve the safety of Defendant's employees and customers.   The threshold for establishing a legitimate nondiscriminatory reason is not a high standard.   *Weiss v. Quinnipiac Univ.*, No. 3:20-CV-00375 (JCH), 2021 WL 4193073, at *4 (D. Conn. Sept. 15, 2021).   "Importantly, Defendant need not prove these reasons are the actual reasons for the adverse employment action; rather, 'by producing evidence (whether ultimately persuasive or not) of nondiscriminatory reasons,' Defendant sustains its burden under the second step of the *McDonnell Douglas* framework."   *Benoit*, 2022 WL 3043240, at *8 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993); *see also Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) ("The defendant need not persuade the court that it was actually motivated by the proffered reason[].   It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981))).

Here, Defendant notes that the company policy in question requires that any workplace conduct violating its Workplace Violence Prevention Policy must immediately be reported. It argues that Plaintiff's delay in reporting constituted a violation of the policy requirements—and indeed, prior to Plaintiff reporting the incident the next morning, Eric Davis had approached one of the complaining employees about the report. (*See* Dkt. 59 at ¶ 101). The Court agrees that enforcement of company safety policies is of paramount importance and provides a legitimate nondiscriminatory reason to support Plaintiff's termination. *Summit v. Equinox Holdings, Inc.*, No. 20 CIV. 4905 (PAE), 2022 WL 2872273, at *12 (S.D.N.Y. July 21, 2022) ("It is well established that a violation of a workplace violence policy constitutes a legitimate, nondiscriminatory reason for an employee's termination."); *Brown v. Scarsdale Vill. Hall*, No. 95 CIV. 4488 DLC, 1996 WL 445360, at *5 (S.D.N.Y. Aug. 7, 1996) (finding legitimate nondiscriminatory reason for termination "following an investigation that permitted them to conclude that [plaintiff's] behavior constituted a threat to the safety of [defendant's] employees and presented a serious management problem"), *aff'd*, 113 F.3d 1229 (2d Cir. 1997).

### D.    Pretext

The Court now turns to the last step of the *McDonnell Douglas* test. Defendant contends that Plaintiff has introduced no evidence of pretext. "A plaintiff may demonstrate pretext by showing 'weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its

action.'"  *Carr v. New York City Transit Auth.*, No. 16-CV-9957 (VSB), 2022 WL 824367, at *9 (S.D.N.Y. Mar. 18, 2022) (quoting *Gokhberg v. PNC Bank, Nat'l Ass'n*, 17-cv-00276 (DLI)(VMS), 2021 WL 421993, at *7 (E.D.N.Y. Jan. 6, 2021)).  "A showing that similarly situated employees belonging to a different [protected class] received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for . . . discrimination."  *Osekavage v. Sam's E., Inc.*, No. 19-CV-11778 (PMH), 2022 WL 3084320, at *8 (S.D.N.Y. Aug. 3, 2022) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000)); *Schneider,* 2019 WL 294309, at *5 ("Pretext may be demonstrated by additional evidence that the employer's proffered reason is not credible or by reliance on the evidence supporting the *prima facie* case alone." (citing *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 38 (2d Cir. 1994)).

Of course, it is relevant to a pretext determination that Devin Perkins, a white male without a known disability, received more favorable treatment after engaging in the same exact conduct.  As noted, both Plaintiff and Devin Perkins allegedly received the same report of information about Eric Davis possessing a knife in the workplace.  The reporting employee identified this prior complaint during an investigation of the incident in the presence of the human resources representative involved in Plaintiff's termination—and Devin Perkins himself played a role in Plaintiff's termination.  Both Plaintiff and Devin Perkins were subject to the same leadership-level provisions in the Workplace Violence Prevention Policy and both reported to Nicole Averill.  That

Plaintiff was terminated and Devin Perkins received no discipline at all supports Plaintiff's claim of pretext, as do the other factual allegations supporting a showing of Plaintiff's *prima facie* case on the race and disability discrimination claims.

Further, Plaintiff raises issues of fact as to pretext by challenging weaknesses in Defendant's proffered reasons for his termination.  Plaintiff argues that the information that was reported to him did not rise to the level of a workplace violence incident.  He contends that neither Caitlin Allen or Sally Peer-Malone stated that they felt threatened or that Eric Davis was using the knife as a weapon, and Plaintiff did not get the impression from Caitlin Allen or Sally Peer-Malone that the presence of the knife at work was a recent event.  The fact that Devin Perkins apparently did not feel it necessary to report the information to his superiors when he learned it tends to corroborate Plaintiff's impression of the seriousness of the threat of immediate harm.  Importantly, too, it was not Caitlin Allen or Sally Peer-Malone who came to Plaintiff about the knife; rather, Plaintiff only became aware of the information when Bridget Barber casually mentioned it in a meeting with him about something else.  It was Plaintiff who took the initiative to follow up on Bridget Barber's comment and request to meet with Caitlin Allen or Sally Peer-Malone that same day.  Further, the meeting wherein Plaintiff learned that Caitlin Allen felt uncomfortable being shown the knife did not conclude until after closing hours on January 4, 2017, and Plaintiff reported it to his supervisor as he drove into work on the morning of January 5, 2017.

- 27 -

The Workplace Violence Prevention Policy does not define what constitutes "immediate" reporting. While Defendant argues that Plaintiff admitted at his deposition that he should not have waited until the next day to report the incident (Dkt. 59 at ¶ 102), Plaintiff argues that his testimony is not a concession and instead, supports the steps he took to report the information as soon as possible, which he contends in this case was the following morning. (Dkt. 60-1 at 64). The Court agrees that Defendant has construed Plaintiff's deposition testimony far too broadly—or at the very least, a reasonable jury may so conclude.

Drawing all inferences in Plaintiff's favor, a reasonable factfinder could find that his termination was a pretext for race and disability discrimination. On the other hand, the Court does not reach a similar conclusion with respect to Plaintiff's age discrimination claim. As noted above, the Court does not find that Plaintiff has raised any genuine issue of material fact to suggest that he could succeed in establishing a *prima facie* case of age discrimination, and even if he could, any such *prima facie* case is weak. *See Almodovar v. Cross Fin. Corp.*, No. 3:20-CV-01179 (JCH), 2022 WL 1810132, at *8 (D. Conn. June 2, 2022) ("Where, as is the case here, there is only a single similarly situated employee, and the record is otherwise devoid of direct evidence of discriminatory intent, the Second Circuit has held that a plaintiff often needs something more upon which a reasonable jury can infer pretext."). Considering all the evidence, the Court concludes that even if Plaintiff had sufficient evidence of age discrimination to reach the third step of the *McDonnell Douglas* test, the proof is insufficient—even

considering the weaknesses in Defendant's proffered legitimate non-discriminatory reasons noted above—for a reasonable jury to conclude that but for Plaintiff's age, he would not have been terminated. *See*, *e.g.*, *Rinaldi v. Nice, Ltd.*, No. 19 CIV. 424 (LGS), 2021 WL 827767, at *6-7 (S.D.N.Y. Mar. 4, 2021) (where *prima facie* case of age discrimination was weak, plaintiff could not overcome employer's proffered legitimate, nondiscriminatory reason for termination).

In sum, when all this evidence is viewed as a whole, the Court concludes that Plaintiff has established a *prima facie* case of race and disability discrimination pursuant to Title VII, the ADA, and NYSHRL, and he has further raised genuine issues of material fact concerning whether Defendant's cited reasons for firing Plaintiff were pretextual. Accordingly, Defendant's motion for summary judgment on Plaintiff's race and disability discrimination claims in violation of Title VII, the ADA, and the NYSHRL, is denied, but is granted as to Plaintiff's failure to accommodate claim and age discrimination claim.[4]

---

[4] The complaint makes a passing reference to a hostile work environment (Dkt. 1 at 26), but Plaintiff has not contended in his opposition papers that he is asserting such a claim, and indeed, the complaint does not sufficiently assert any such claim. Accordingly, to the extent Plaintiff attempted to pursue any such claim, it has been abandoned.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. 57) is

granted in part and denied in part.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 7, 2022
         Rochester, New York

- 30 -