**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
212.309.6000/6656

Kimberley E. Lunetta
John P. Guyette
William A. Engelhart

<u>**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**</u>

| | |
|---|---|
| **SCOTTY L. WALL,** | : |
| **Plaintiff,** | : |
| v. | : Case No. 6:19-cv-06387 |
| **CHARTER COMMUNICATIONS, INC., f/k/a TIME WARNER CABLE, INC., d/b/a SPECTRUM,** | : |
| **Defendant.** | : |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR JUDGMENT AS A MATTER OF LAW**</u>

**TABLE OF CONTENTS**

Page

I. BACKGROUND ........................................................................................................... 1
II. ARGUMENT ................................................................................................................ 3
   A. No Reasonable Jury Could Conclude That Charter Terminated Mr. Wall Because Of His Race ...................................................................................................................... 3
      1. Plaintiff Has Not Established A *Prima Facie* Case Of Race Discrimination .................. 3
      2. No Reasonable Jury Could Find Defendant's Legitimate Nondiscriminatory Reason For Plaintiff's Termination To Be A Pretext For Unlawful Racial Discrimination ............... 6
   B. No Reasonable Jury Could Conclude That Charter Terminated Mr. Wall Because Of His Disability .................................................................................................................. 9
      1. Plaintiff Has No Live Claim For Retaliation, Failure To Accommodate, Or Hostile Work Environment Under State Or Local Law ............................................................... 9
      2. No Reasonable Jury Could Find Plaintiff Has Made A Prima Facie Claim Of Disability Discrimination ................................................................................................ 10
      3. No Reasonable Jury Could Find Defendant's Legitimate Nondiscriminatory Reason For Plaintiff's Termination To Be A Pretext For Unlawful Disability Discrimination ....... 12
   C. Defendant Also Moves For Judgment As A Matter Of Law Based On The Arguments Raised In Their Summary Judgment Motion .................................................................. 14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Allen v. SouthCrest Hosp.*,
455 F. App'x 827 (10th Cir. 2011) ...........................................................................................11

*Bonilla v. Boces*,
No. 06-cv-6542, 2010 WL 3488712 (W.D.N.Y. Sept. 2, 2010).........................................4, 11

*Chavis v. Wal-Mart Stores, Inc.*,
265 F. Supp. 3d 391 (S.D.N.Y. 2017).........................................................................................3

*DeJesus v. Dist. One Cmty. Educ. Council*,
No. 08-cv-10666, 2010 WL 3959624 (S.D.N.Y. Sept. 14, 2010) ..............................................5

*Dinkins v. Suffolk Transp. Serv., Inc.*,
No. 07-cv-3567, 2010 WL 2816624 (E.D.N.Y. July 15, 2010)..................................................6

*Dupree v. Younger*,
143 S. Ct. 1382 (2023).................................................................................................................2

*Epstein v. Cnty. of Suffolk*,
No. 14-cv-0937, 2016 WL 4257349 (E.D.N.Y. Aug. 11, 2016) ...............................................13

*Francis v. Namdor, Inc.*,
No. 15-cv-745, 2017 WL 3634601 (E.D.N.Y. Aug. 22, 2017) .................................................12

*Frazier v. City of N.Y. Dep't of Correction*,
No. 14-cv-1224, 2016 WL 4444775 (E.D.N.Y. Aug. 23, 2016) ...............................................12

*Gaidasz v. BOCES*,
791 F. Supp. 2d 332 (W.D.N.Y. 2011) .......................................................................................7

*Gunning v. Cooley*,
281 U.S. 90 (1930).......................................................................................................................2

*Hampson v. State Farm Mut. Auto Ins. Co.*,
No. 11-cv-00258, 2015 WL 12733387 (N.D.N.Y. Mar. 26, 2015) ....................................13, 14

*Harding v. Shinseki*,
No. 12-cv-981, 2015 U.S. Dist. LEXIS 134759 (W.D.N.Y. 2015) ............................................7

*Harkola v. Energy E.*,
No. 09-cv-6318, 2011 WL 3476265 (W.D.N.Y. Aug. 9, 2011)..................................................9

*Hirschberg v. Bank of Am., N.A.*,
    754 F. Supp. 2d 500 (E.D.N.Y. 2010) .................................................................................6

*Holt v. Roadway Package Sys., Inc.*,
    506 F. Supp. 2d 194 (W.D.N.Y. 2007) ...........................................................................4, 11

*Iverson v. Verizon Commc'ns*,
    No. 08-cv-8873, 2009 WL 3334796 (S.D.N.Y. Oct. 13, 2009) ...............................................13

*Kim v. Goldberg, Weprin, Finkel Goldstein, LLP*,
    862 F. Supp. 2d 311 (S.D.N.Y. 2012) ...............................................................................13

*Klemme v. W. Irondequoit Cent. Sch. Dist.*,
    69 F. Supp. 3d 335 (W.D.N.Y. 2014) ................................................................................12

*Littlefield v. AutoTrader.com*,
    834 F. Supp. 2d 163 (W.D.N.Y. 2011) ................................................................................6

*Mazurkiewicz v. NYC Health & Hosps. Corp.*,
    No. 09-cv-5962, 2010 WL 3958852 (S.D.N.Y. Sept. 16, 2010) .............................................12

*McBride v. Amer Tech., Inc.*,
    No. 12-cv-00489, 2013 WL 2541595 (W.D. Tex. June 10, 2013) ..........................................11

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ..........................................................................................................3

*Noll v. Int'l Bus. Machines Corp.*,
    787 F.3d 89 (2d Cir. 2015) ................................................................................................3

*Patria v. E. Hartford Bd. Of Educ.*,
    No. 3:07-cv-00428, 2009 WL 840667 (D. Conn. Mar. 31, 2009) ............................................7

*Tepperwien v. Entergy Nuclear Operations, Inc.*,
    663 F.3d 556 (2d Cir. 2011) ...............................................................................................2

*Terry v. Ashcroft*,
    336 F.3d 128 (2d Cir. 2003) ........................................................................................3, 10

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir. 2015) .................................................................................................7

*Vives v. N.Y.C. Dep't of Corr.*,
    No. 15-cv-06127, 2019 WL 1386738 (N.D.N.Y. Mar. 27, 2019) ....................................13, 14

*Voccola v. Gaudett*,
    861 F. Supp. 2d 52 (D. Conn. 2012) ...................................................................................2

*Weisgram v. Marley Co.*,
 528 U.S. 440 (2000) ..................................................................................................... 2

*Whitt v. Kaleida Health*,
 298 F. Supp. 3d 558 (W.D.N.Y. 2018) ........................................................................ 9

*Wilson v. New York City*,
 500 F. App'x 94 (2d Cir. 2012) ............................................................................. 4, 11

**Other Authorities**

29 C.F.R. § 1630.2(j)(1)(ii) ................................................................................................. 10

9A C. Wright & A. Miller, Federal Practice and Procedure § 2521, 240 (2d ed.
 1995) ............................................................................................................................ 2

Fed. R. Civ. P. 50(a) ............................................................................................................ 2

I.      **BACKGROUND**

The jury trial in this case began on June 23, 2023. After three days of testimony (June 26-June 28) from 6 witnesses—Sally Peer-Malone; Plaintiff Scotty Wall; Devin Perkins; Nicole Averill; Kaitlin ("Katie") Allen; and Meagan Miles—Plaintiff concluded his case in chief on June 28, 2023. Plaintiff presented testimony from Director of Sales for the Northeast Region Nicole Averill and Human Resources ("HR") Meagan Miles who confirmed Charter's legitimate business rationale for Mr. Wall's termination—namely Mr. Wall's violation of Charter's Workplace Violence Prevention and Standards of Business Conduct Policies "by not reporting one [workplace violence] incident immediately, and another by not reporting it all." Ex. 414.

The jury did not hear any testimony regarding any purported comments tied to Mr. Wall's race or disability. No testimony from any doctor or any medical document confirming that Mr. Wall was in fact "disabled" at the time of his termination on January 25, 2017 was presented to the jury. Nor, was there any evidence presented to the jury that those involved in the decision to terminate Mr. Wall's employment—recommended by Nicole Averill in consultation with her leaders Ben Keady, Lou Brazzoni, and Patty Elliason—were aware of any disability claimed by Mr. Wall at the time of his termination. Although witnesses Devin Perkins and Nicole Averill testified they were aware that Mr. Wall had been on a leave for some period in 2016, they did not know his medical condition or, more importantly, once he returned with no restrictions, that he was disabled at the time of his termination. Indeed, when Mr. Wall returned to work the day after Labor Day on September 5, 2017, he resumed the same position he had held previously (Retail Store Supervisor) and performed his job without any limitations until his termination more than four months later on January 25, 2017. Finally, there was no evidence presented of any discriminatory motive in Charter's termination decision. The testimony of Ms. Averill and Ms.

1

Miles confirmed that the sole rationale for Mr. Wall's termination was due to his violation of Charter's Workplace Violence Prevention and Standards of Business Conduct Policies.

The Federal Rules provide that if a party "has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the court may (A) "resolve the issue against the party" and (B) "grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a); *Voccola v. Gaudett*, 861 F. Supp. 2d 52, 53-54 (D. Conn. 2012); *see also Weisgram v. Marley Co.*, 528 U.S. 440, 447–48 (2000) (citing 9A C. Wright & A. Miller, Federal Practice and Procedure § 2521, 240 (2d ed. 1995)) ("[Rule 50] allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result.'"). As the Supreme Court recently observed, the Rule 50(a) standard "largely 'mirrors' the summary-judgment standard, the difference being that district courts evaluate Rule 50(a) motions in light of the trial record rather than the discovery record." *Dupree v. Younger*, 143 S. Ct. 1382, 1387 (2023). Thus, the question is no longer what facts may be presented at trial, but rather, what evidence is actually before the jury.

Judgment as a matter of law is appropriate where there is "such a complete absence of evidence supporting [a contrary] verdict that the jury's findings could only have been the result of sheer surmise and conjecture" or where "the evidence in favor of the movant is so overwhelming that reasonable and fairminded persons could not arrive at a verdict against it." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567 (2d Cir. 2011) (internal quotation marks and alterations omitted). As at summary judgment, a "mere scintilla of evidence" is "not enough to require the submission of an issue to the jury." *Gunning v. Cooley*, 281 U.S. 90, 94 (1930).

2

## II. <u>ARGUMENT</u>

Following summary judgment, Plaintiff has only four claims remaining (1) discrimination on the basis of his race (African American) in violation of Title VII of the 1964 Civil Rights Law; (2) discrimination on the basis of his race in violation of the New York State Human Rights Law; (3) discrimination on the basis of his disability in violation of the Americans with Disabilities Act of 1990; and (4) discrimination on the basis of his disability in violation of the New York State Human Rights Law.[1] In order to establish race and disability discrimination, Mr. Wall must proceed under the three-step, burden-shifting framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (requiring, first, that Plaintiff make out a prima facie case, second, that Defendant offer a non-discriminatory reason for the alleged adverse action and, third, that Plaintiff show that non-discriminatory reason is pretextual). For the reasons explained below, Plaintiff has not provided sufficient evidence as a matter of law.

### A. **No Reasonable Jury Could Conclude That Charter Terminated Mr. Wall Because Of His Race.**

#### 1. <u>Plaintiff Has Not Established A *Prima Facie* Case Of Race Discrimination</u>

For his claim to get off the ground under the *McDonell Douglas* test, Plaintiff must first establish a prima *facie case* of discrimination. To do this, Plaintiff must introduce evidence that establishes that: (1) he was within the protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003). But after resting his case, Plaintiff has not satisfied the fourth prong of this

---

[1] "New York courts require the same standard of proof for claims brought under the NYSHRL as for those brought under Title VII." *Chavis v. Wal-Mart Stores, Inc.*, 265 F. Supp. 3d 391, 398 (S.D.N.Y. 2017). Similarly, ADA and NYSHRL claims are analyzed according to the same standard. *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) ("A claim of disability discrimination under the NYSHRL . . . is governed by the same legal standards as govern federal ADA claims.").

test, having failed to provide sufficient evidence that his termination occurred "under circumstances giving rise to an inference of discrimination."

To establish such an inference a "[p]laintiff cannot simply rely on the fact that he was fired as proof that the termination was motivated by discriminatory animus . . . he must point to facts that suggest the termination was motivated, at least in part, because of [his protected class] . . . Such facts might include: (1) actions or remarks made by decision makers that could be viewed as reflecting discriminatory animus; or (2) preferential treatment given to employees outside the protected class."). *Bonilla v. Boces*, No. 06-cv-6542, 2010 WL 3488712, at *7 (W.D.N.Y. Sept. 2, 2010). There is no evidence in the record that meets this description, which prevents Plaintiff from establishing a *prima facie* case—thus requiring dismissal of this claim.

First, Plaintiff has presented no evidence of any comments tied to his race. *Holt v. Roadway Package Sys., Inc.*, 506 F. Supp. 2d 194, 201 (W.D.N.Y. 2007) ("Although Holt claims that on two or three occasions, a fellow manager and independent contractors of FedEx Ground used offensive racial terms in his presence, such comments by non decision-make[rs] are insufficient to support an inference of discrimination.").

Second, Plaintiff has not provided evidence of preferential treatment for other employees who similarly violated Charter's Workplace Violence Prevention Policy and of which Charter was aware. Indeed, the evidence shows that Eric Davis, who is white, was the only other employee *that Charter was aware of* as having violated the Workplace Violence Prevention policy for the January 4, 2017 knife incident. Mr. Davis was suspended and ultimately terminated the next day on January 5, 2017. *Wilson v. New York City*, 500 F. App'x 94, 97 (2d Cir. 2012) (affirming summary judgment to defendant where decision maker also disciplined employees who were not in the protected category). Further, belying any inference of racial discrimination, Charter

4

subsequently filled Mr. Wall's role with an employee who also was African American, Christopher Nicholson. *DeJesus v. Dist. One Cmty. Educ. Council*, No. 08-cv-10666, 2010 WL 3959624, at *4 (S.D.N.Y. Sept. 14, 2010) ("The fact that plaintiff's immediate replacement is of the same protected classes effectively precludes plaintiff from establishing that her termination occurred under the requisite circumstances giving rise to an inference of discrimination.").

Mr. Wall's only so-called evidence of purported preferential treatment pertains to Devin Perkins, Mr. Wall's white manager. Sally Peer-Malone testified that Eric Davis opened a box cutter, a tool provided to Charter employees, in front of her some time in November 2017, which she later mentioned to Devin Perkins. Ms. Peer-Malone testified that Mr. Davis opened the box cutter, she put the equipment she was holding down, and walked away. June 26, 2023 Transcript 33:16-25; 44:2-6 (Q. And you specifically said Mr. Davis had a box cutter; correct? A. Yes. Q. It wasn't a hunting knife? No.). She claims she then called Devin Perkins and said, "'I don't know who he [referring to Mr. Davis] thinks he is or who he thinks he is doing this to. He's lucky it's me.' Because I was, like, okay, I know you're just being Eric Davis, so it's whatever. But I was really aggravated about it. But after I yelled about it, I took a moment and went back to work." June 26, 2023 Transcript 35:3-9. Ms. Peer-Malone then stated that Mr. Perkins asked her if she was "okay," to which she replied "'No, I'm not okay.' And then it was a whole lot of yelling and then I was okay." *Id.* 35:14-16. Ms. Peer Malone testified that she did not tell Nicole Averill about the incident with the box cutter. Ms. Peer Malone also testified that she was not afraid of Mr. Davis, and she was not scared by Mr. Davis's use of the box cutter in November 2016. *Id.* 44:7-15. Based on Ms. Peer Malone's testimony, this is hardly an incident akin to the January 4, 2017 report by Kaitlin Allen to Mr. Wall that Eric Davis had brought his own knife to work (a hunting knife), took it out and was waiving it toward her, and in Plaintiff's words said that made

5

her feel "uncomfortable." Ex. 414; June 26, 2023 Transcript 101:4-10 ("Katie says, 'Yeah. He made me feel uncomfortable.' And so, the moment she said 'uncomfortable,' that was the trigger word for me to where – that is where I started probing deeper, I said, 'What do you mean by uncomfortable?' And she said, "You know, he had a knife and he was rubbing it on his arm, and I was uncomfortable with it.'").

On this testimony alone, a reasonable jury would not have a legally sufficient evidentiary basis to find for the Plaintiff on his discrimination claim.

However, even assuming a jury could construe Ms. Peer Malone's description of the box cutter incident in 2016 as a workplace violence incident under Charter's policy, and that Mr. Perkins was aware of it, there is no evidence that Nicole Averill or Meagan Miles were made aware at the time by Ms. Peer Malone or anyone else, that she had reported a work place violence incident to Mr. Perkins. *Littlefield v. AutoTrader.com*, 834 F. Supp. 2d 163, 170 (W.D.N.Y. 2011) ("An employee who allegedly engaged in misconduct comparable to the plaintiff's is not similarly situated to the plaintiff when the employer is unaware of what the comparator employee supposedly did.") (internal citation omitted); *Hirschberg v. Bank of Am., N.A.*, 754 F. Supp. 2d 500, 516 (E.D.N.Y. 2010) (finding a coworker could not be a comparator where "Plaintiff has not produced any evidence that the Bank knew or should have known that any of these comparators . . . cut and pasted customer signatures"); *Dinkins v. Suffolk Transp. Serv., Inc.*, No. 07-cv-3567, 2010 WL 2816624, at *10 (E.D.N.Y. July 15, 2010) ("An employee who allegedly engaged in misconduct comparable to the plaintiff's is not similarly situated to the plaintiff when the employer is unaware of what the comparator employee supposedly did.").

    2.    <u>No Reasonable Jury Could Find Defendant's Legitimate Nondiscriminatory Reason For Plaintiff's Termination To Be A Pretext For Unlawful Racial Discrimination</u>

6

Even if Plaintiff had introduced some evidence that would allow for a reasonable jury to find he had established a *prima facie case*, his claim still fails under the *McDonell Douglas* test because Defendant has articulated "some legitimate nondiscriminatory reason" (violating Charter's Workplace Violence Prevention and Code of Conduct Policies) for his termination and Plaintiff has not proven that the employer's reason "was in fact pretext" for discrimination. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015) (internal citations omitted).

At the outset, Defendant has articulated a legitimate nondiscriminatory reason for his termination, namely his violation of Charter's Workplace Violence Prevention Policy. The testimony from Ms. Averill and Ms. Miles, as well as the documentary evidence confirms that Charter terminated Mr. Wall based on his violation of the Workplace Violence Prevention policy by failing to "immediately" report an employee who brought a weapon to work, waiting approximately 17 hours from first receiving the report from Kaitlin Allen on January 4, 2017 at around 5:30 p.m., to saying anything to anyone at Charter at approximately 10:30 a.m. the following day on January 5, 2017. Ex. 414; *See Harding v. Shinseki*, No. 12-cv-981, 2015 U.S. Dist. LEXIS 134759, *10 (W.D.N.Y. 2015) (finding that an employer had a legitimate reason for discipline "in light of the undisputed evidence that Harding left a loaded weapon and two ammunition clips in a public restroom at the Medical Center, thereby creating a clear and present danger"); *Gaidasz v. BOCES*, 791 F. Supp. 2d 332, 337 (W.D.N.Y. 2011) (finding "failure to abide by safety procedures" to be a legitimate, nondiscriminatory reason); *Patria v. E. Hartford Bd. Of Educ.*, No. 3:07-cv-00428, 2009 WL 840667, at *11 (D. Conn. Mar. 31, 2009) (finding that an employer properly terminated an employee who failed to report a threating situation and thus "placed a student in danger by not bringing the above-described situation to the attention of her superiors . . . ."). Indeed, Mr. Wall admits that he was made aware of an employee, Eric Davis,

7

bringing a knife to work and making another employee feel "uncomfortable" but did not report this to anyone until the next day. Nicole Averill explained that she reviewed Mr. Wall's delayed reporting of Eric Davis bringing a weapon to work and threatening other employees. After her review, she determined that Mr. Wall had violated the policy. Ms. Averill further explained that the policy is a zero-tolerance policy that applies to all employees and that "[i]f there is a question as to the need to report any particular observed behavior, managers are directed to contact Security or Human Resources for clarification." Ex. 409. While this violation would have warranted termination on its own, Mr. Wall had also received prior discipline for misconduct including on January 12, 2016 (Documented Counseling-Misconduct) and on September 22, 2016 (Final Written Warning – Misconduct). Exs. 412, 413. Additionally, the evidence shows that Charter's safety fears were not unfounded as, during Ms. Averill's investigation, Eric Davis admitted to having guns in his car. Moreover, Mr. Wall was aware of Eric Davis's history of aggressive behavior, which Mr. Wall also did not report. For example, Mr. Wall admitted that in November 2016, after a coworker reported that Eric Davis was late to return from lunch, Eric "went off" and "slammed the door, hit the wall and yelled." Ex. 414.

And as much as Plaintiff may disagree with the reason for his termination, he has provided no evidence that it is pretextual.

To the extent Mr. Wall's purported evidence of pretext relates to his use of a company car, his loss of an office, his change in base store from East Rochester to Batavia, and his December vacation request, which he was granted and with Devin Perkins agreed to perform some remote work from home, are otherwise innocuous, legitimately justified and, as such, conclusory and not evidence, circumstantial or otherwise, of any racial discrimination tied to Mr. Wall's termination for violating company policy. *Harkola v. Energy E.*, No. 09-cv-6318, 2011 WL 3476265, at *10

8

(W.D.N.Y. Aug. 9, 2011) (finding unsupported contention that male employees were more likely to be disciplined than female employees could not demonstrate discrimination).

Accordingly, and based on the scant evidence presented in Plaintiff's case in chief, a reasonable jury could not find for Plaintiff on his claims of race-based discrimination under Title VII and the NYSHRL.

### B. No Reasonable Jury Could Conclude That Charter Terminated Mr. Wall Because Of His Disability

Plaintiff's claims of disability-based discrimination under the ADA and NYSHRL, also fail as a matter of law a reasonable jury could not find for Plaintiff based on the record evidence.

#### 1. Plaintiff Has No Live Claim for Retaliation, Failure To Accommodate, Or Hostile Work Environment Under State Or Local Law

At the outset, Plaintiff's sole remaining claim as to alleged disability discrimination, and the only claim pled in this case, is for discriminatory termination under the ADA and NYSHRL. Dkt. 1 at 1-2. Thus, evidence related to any other claims, in particular the granting of leave or leave as a reasonable accommodation, provides only background and is not direct evidence of disability discrimination.

As the Court observed in its September 7, 2022 summary judgment decision (Dkt. 71) "no such [retaliation] claim appears in his complaint." Moreover, Plaintiff's Right to Sue letter (Dkt. 1-1 at 2), does not reflect that he filed a claim of retaliation. Accordingly, while some of Plaintiff's arguments relating to retaliation may be generally relevant to the claims he has asserted in his complaint, a claim for retaliation is not before the Court and will not be addressed. *Whitt v. Kaleida Health*, 298 F. Supp. 3d 558, 568 (W.D.N.Y. 2018) ("Raising a new claim for the first time in opposition to summary judgment is inappropriate."). Similarly, the Court dismissed Plaintiff's failure to accommodate claim on summary judgment, and, with regards to any passing hostile work

9

environment claim concluded that "the complaint does not sufficiently assert any such claim." Dkt. 71 at 11, 21, and 29 at fn. 4. Evidence as to these claims provides only background for his remaining termination claim based on alleged discrimination.

### 2. No Reasonable Jury Could Find Plaintiff Has Made A Prima Facie Claim Of Disability Discrimination

Regarding his live claim, as with his race discrimination claims, Plaintiff must first establish a *prima facie* case. Also, as with his race discrimination claims, Plaintiff must establish that: (1) he was within the protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See Ashcroft*, 336 F.3d at 137-38.

Here, with regards to the first prong, Plaintiff has not provided sufficient evidence from which a reasonable jury could conclude that he was disabled at the time of his termination on January 25, 2017, because after his brain tumor was removed via a craniotomy procedure, he returned to work with no restrictions on September 5, 2017 and remained in the same role and with the same pay until his termination more than four months later.

Indeed, Plaintiff has not provided any medical evidence from which a reasonable juror could conclude that he was a person with a disability within the meaning of the ADA or the NYSHRL at the time of his termination. Importantly, "not every impairment will constitute a disability within the meaning of" the ADA. 29 C.F.R. § 1630.2(j)(1)(ii). To the extent Plaintiff testified that he experienced migraine headaches after he returned to work, he did not establish that they were persistent or server enough to "substantially limit" his ability to "perform a major life activity." *See id.* ("An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as *compared to most people in the general population*.") (emphasis added); *Allen v. SouthCrest Hosp.*, 455 F. App'x

10

827, 835 (10th Cir. 2011) ("[Plaintiffs are] required, even after the enactment of the ADAAA, demonstrate that [they are] substantially limited in performing a class of jobs or broad range of jobs in various classes as compared to most people with comparable training, skills, and abilities.").

Moreover, it is well settled that mental impairments such has headaches—even ones that impair normal neurological functioning—are not necessarily substantially limiting. For example, in *McBride v. Amer Tech., Inc.*, No. 12-cv-00489, 2013 WL 2541595, at *1 (W.D. Tex. June 10, 2013), the court found that—even though the plaintiff suffered from vertigo, which made him feel "'delusional,'" and Tourette's Syndrome, "a neurological disorder that [made] him snort and make facial movements when he's not focused"—the impairment did not constitute a disability because the plaintiff was fully functional and could perform all major life activities. Plaintiff has not adduced any evidence that he was substantially limited.

With regards to the fourth prong, as with his race claims, Plaintiff has presented no evidence of comments or disparate treatment that would allow for an inference of disability discrimination. *See Bonilla*, 2010 WL 3488712, at *7. After resting his case, Plaintiff has not introduced evidence of a single comment that suggests any discriminatory animus based on the benign tumor that was removed in 2016, let alone one made by a decision maker. *Holt,* 506 F. Supp. 2d at 201. Nor has Plaintiff introduced evidence that there was a comparator who was treated differently. As with his race discrimination claim, Eric Davis (who was not disabled) was terminated for his violation of Charter's Workplace Violence Prevention Policy, just like Mr. Wall. *Wilson,* 500 F. App'x at 97.

Even if sporadic migraine headaches constitute disability, the evidence shows that Charter had no knowledge of any such disability—defeating an inference of discrimination. *Klemme v. W.*

11

*Irondequoit Cent. Sch. Dist.*, 69 F. Supp. 3d 335, 340 (W.D.N.Y. 2014) (finding that an employer cannot be liable under the ADA when the decisionmakers "had no knowledge of the disability . . . [and an] employer cannot fire an employee because of a disability unless it knows of the disability").

Plaintiff riles solely on the temporal proximity between his return from disability leave on September 5, 2016 and his termination on January 25, 2017 to establish a discriminatory inference. But the over four-and-a-half months between these two events is too attenuated to support an inference of discrimination. *See Francis v. Namdor, Inc.,* No. 15-cv-745, 2017 WL 3634601, at *3 (E.D.N.Y. Aug. 22, 2017) (granting summary judgment to defendant in part where plaintiff was first treated for his disability as long as 80 days before his termination); *see Mazurkiewicz v. NYC Health & Hosps. Corp.*, No. 09-cv-5962, 2010 WL 3958852, at *5 (S.D.N.Y. Sept. 16, 2010) ("The Second Circuit often utilizes a two month window to determine whether the temporal connection between the protected activity and alleged retaliation is sufficiently close or too attenuated."); *Frazier v. City of N.Y. Dep't of Correction*, No. 14-cv-1224, 2016 WL 4444775, at *4 (E.D.N.Y. Aug. 23, 2016) (finding in the retaliation context "district courts in the Second Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation").

      3.    <u>No reasonable Jury Could Find Defendant's Legitimate Nondiscriminatory Reason For Plaintiff's Termination To Be A Pretext For Unlawful Disability Discrimination</u>

Regardless of Mr. Wall's claims, the reason for Mr. Wall's termination was the same—his violation of Charter's Workplace Violence Prevention and Code of Business Conduct Policies. As with his race claim, Plaintiff has introduced no evidence that suggests that his termination was based on disability discrimination. *See supra* 4-7. The only circumstantial evidence of pretext

alleged by Plaintiff pertains to Devin Perkins, which for the reasons stated above is insufficient for a reasonable jury to find for Plaintiff. *See supra* 6-7.[2]

Plaintiff's disability discrimination claim is further belied by the fact that Plaintiff requested, received, and freely took leave in 2004 and then 12 years later in 2016. Each time, he returned to the same job and title with the same general responsibilities and pay. *Kim v. Goldberg, Weprin, Finkel Goldstein, LLP*, 862 F. Supp. 2d 311, 319 (S.D.N.Y. 2012) (granting summary judgment to defendant where plaintiff "admits that when she returned from leave she returned to the same job with the same title, the same responsibilities and the same compensation"); *see also Iverson v. Verizon Commc'ns*, No. 08-cv-8873, 2009 WL 3334796, at *5 (S.D.N.Y. Oct. 13, 2009) (granting summary judgment to defendant where plaintiff had claimed "temporal proximity between the *disclosure of disability* and termination") (emphasis added). Moreover, the evidence confirms that Mr. Wall returned from leave to the same position and salary as when he left.

Additionally, the Court referenced *Vives v. N.Y.C. Dep't of Corr.*, No. 15-cv-06127, 2019 WL 1386738 (N.D.N.Y. Mar. 27, 2019) and *Hampson v. State Farm Mut. Auto Ins. Co.*, No. 11-cv-00258, 2015 WL 12733387, at *15 (N.D.N.Y. Mar. 26, 2015) in regards to Plaintiff's disability claims during the June 23 hearing. Both of these cases are distinguishable. In those cases, unlike here, the plaintiffs alleged that their disabilities caused their excessive absences that, in turn, led to their terminations. *Vives*, 2019 WL 1386738, at *11; *Hampson*, 2015 WL 12733387, at *15. Here, Plaintiff does not and cannot assert such a claim. That is because he was not terminated for

---

[2] In support of his disability discrimination claim, Plaintiff provided threadbare testimony related to his use of a company car, his loss of an office, his change in base store, and his purportedly denied vacation requests, but Plaintiff (fatally) failed to connect any of these alleged events to his discrimination claim. *Epstein v. Cnty. of Suffolk*, No. 14-cv-0937, 2016 WL 4257349, at *4 (E.D.N.Y. Aug. 11, 2016) (dismissing discrimination claim where Plaintiff "has not linked any employment decisions to inferences of . . . discrimination").

taking leave or any other consequence related to disability. Rather, he was terminated for violating Charter's Workplace Violence Prevention and Standards of Business Conduct policies.

For these reasons, no reasonable jury could find Plaintiff's discrimination claim based on disability to be viable, mandating dismissal as a matter of law.

### C. Defendant Also Moves For Judgment As A Matter Of Law Based On The Arguments Raised In Their Summary Judgment Motion

Finally, Defendant also moves for judgment under Rule 50 based on the arguments raised in Defendant's summary judgment motion (Dkts. 57-60, 70).

Dated:  June 28, 2023

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ John P. Guyette*
Kimberley E. Lunetta
John P. Guyette
William A. Engelhart
101 Park Avenue
New York, NY  10178
Tel: (212) 309-6000/6656
Fax: (212) 309-6001
kimberley.lunetta@morganlewis.com
john.guyette@morganlewis.com
william.engelhart@morganlewis.com

Jocelyn R. Cuttino (*pro hac vice*)
1111 Pennsylvania Ave. NW
Washington, DC 20004
Tel: 202.739.5927
Fax: 202.739.3001
jocelyn.cuttino@morganlewis.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 28, 2023, I caused to be served Defendant's Memorandum of Law in Support of Defendant's Motion for Judgment as a Matter of Law by ECF upon all counsel of record.

*/s/ John P. Guyette*
John P. Guyette
