UNITES STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SCOTTY L. WALL,

                          Plaintiff,

                                                                  Case No. 6:19-CV-06387-EAW

    -vs-

CHARTER COMMUNICATIONS, INC., f/k/a
TIME WARNER CABLE, INC., d/b/a SPECTRUM,

                          Defendant.
_____

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

I.        **INTRODUCTION AND BACKGROUND**

The jury trial in this case commenced on June 23, 2023. Following the conclusion of the Plaintiff's proof on June 29, 2023, Defendant filed a motion for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. Defendant's motion should be denied in its entirety. Plaintiff has established ample evidence supporting both his claims for race discrimination and disability discrimination pursuant to both federal and state law.

II.       **ARGUMENT**

    A.    **Plaintiff Has Presented a Prima Facie Case That He Was Terminated Because of His Race and That the Alleged Nondiscriminatory Reason for His Termination Was Pretextual**

Discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and New York Executive Law § 286 are governed by the three-part analytical framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) as later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981). *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Haywood v. Heritage Christian Home, Inc.* 97 F.Supp. (W.D.N.Y. 1997).

Under the *McDonnell Douglas* standard, a plaintiff bears the burden of proof and must ultimately establish, by a preponderance of the evidence: (1) membership in a protected group; (2) qualification for a position; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 63 (2d Cir. 1997). If a plaintiff is successful in demonstrating his prima facie case, then the burden shifts to his employer to articulate a legitimate, non-discriminatory purpose for its adverse employment action. *Austin v. Ford Models, Inc.,* 149 F.3d 148, 153 (2d Cir. 1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the defendant is successful in articulating a non-discriminatory "reason", then the plaintiff maintains the opportunity to prove that the defendant's stated "reason" for the plaintiff's termination was merely pretextual. "Although courts must refrain from intruding into an employer's policy apparatus or second guessing a business's decision-making process, they must also allow employees to 'show that the employer's demands were illegitimate or arbitrary." *Meiri* at 995 (citations omitted); *Chareete v. S.M.Flickinger*, 806 F. Supp. 1045, 1056 (N.D.N.Y. 1992).

An employer cannot escape scrutiny by merely asserting that it was a "business decision" which resulted in a plaintiff's termination. "The distinction lies between a poor business decision and a reason manufactured to avoid liability. Thus, facts may exist from which a reasonable jury could conclude that the employer's 'business decision' was so lacking in merit as to call into question its genuineness." *Dister v. The Continental Group*, 859 F.2d 1108, 1116 (2d Cir. 1988) (citations omitted). The United States Supreme Court, in the case of *in Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 33 (2000), relaxed the burden placed upon the plaintiff in demonstrating pretext concerning the defendant's articulated legitimate business reason. Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. *Id.*, at 517 ("Proving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination").

In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the fact finder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." *Wright v.*

*West, 505 U.S. 277, 296* (1992); *Wilson v. United States*, 162 U.S. 613, 620-621 (1986); 2 J. Wigmore, Evidence §278(2), p. 133 (J. Chadbourn rev. ed 1979).

Once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) ("[W]hen all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts with some reason, based his decision on an impermissible consideration"). Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Id*.

In this case, the first three elements of the *McDonnell Douglas* standard are not in dispute. There is ample evidence for the jury to conclude that Mr. Wall was terminated under circumstances which give rise to an inference of discrimination. Proof was presented that Plaintiff was employed as a cable store supervisor by Defendant. Plaintiff's employment with Defendant's predecessor in interest began in 1992. Plaintiff was an exemplary employee and rose through the ranks of the company. He was promoted to the position of cable store supervisor in 2007 and remained in that position until his termination from the company on January 25, 2017. During the time that he was employed as a cable store supervisor, Mr. Wall testified that he received less favorable treatment than his similarly situated Caucasian co-workers.

At the time that he assumed the position of cable store supervisor in 2007, Mr. Wall was given more stores to supervise and supervised more employees (referred to as "direct reports") than his three similarly situated Caucasian co-workers who were also cable store supervisors in the Western New York region. Beginning in 2007, Mr. Wall supervised six stores and had 21 direct

reports. None of his similarly situated co-workers had nearly that number of direct reports. By way of contrast, one similarly situated co-worker, Jackie Thomas, supervised four stores and only nine direct reports. Although the number of stores and direct reports overseen by Mr. Wall meant that Mr. Wall had a heavier workload than his similarly situated peers, he did not receive a higher level of compensation than his peers.

Furthermore, Mr. Wall was not given a company SUV, although the stores he supervised were quite spread out geographically, with his territory covering, inter alia, Geneva, Webster, Brockport, and Batavia. The distance from Geneva to Batavia is more than 70 miles. All three of Mr. Wall's Caucasian peers had company SUVs, although they supervised fewer stores. Furthermore, for many years Mr. Wall did not have an office, although all of his Caucasian peers had offices. Furthermore, Mr. Wall's peers in the Buffalo area had leads, which was a position created to assist the supervisors who managed multiple stores, while Mr. Wall did not. Despite Mr. Wall raising this issue on at least two occasions in meetings with the human resources department, Mr. Wall was not given an office or company car until 2015. He was also not given a lead until 2015.

Mr. Wall was allegedly terminated for violating Defendant's Workplace Violence Prevention Policy. In terminating him, Defendant alleged that Mr. Wall had delayed in reporting an allegation that an employee named Eric Davis had brought a knife into the East Rochester store where he worked and frightened two female co-workers, Kaitlin Allen and Sally Peer Malone. This allegation was first reported to Mr. Wall by his lead, Bridget Barber, on January 4, 2017. After learning this information from Bridget, Mr. Wall drive to the East Rochester store to meet with Ms. Allen and Ms. Peer Malone to investigate the matter.

Mr. Wall arrived at the East Rochester store near the end of the business day. He met first with Ms. Allen. Their conversation initially covered general store operations. Ms. Allen did not bring up any concerns regarding Eric Davis of her own accord to Mr. Wall. Only when Mr. Wall directly asked her did Ms. Allen inform him that Eric Davis did sometimes bring a knife into work, and said that Mr. Wall should speak to Ms. Peer Malone for confirmation. Mr. Wall asked Ms. Peer Malone to join the meeting. Ms. Peer Malone confirmed that Eric Davis sometimes brought a knife into work. He said that Ms. Allen and Ms. Peer Malone initially characterized these incidents as something along the lines of "Eric being stupid." However, upon further inquiry from Mr. Wall, Ms. Allen said the behavior of Mr. Davis in rubbing the knife along his arm made her "uncomfortable." At that point, Mr. Wall informed them that he would have to elevate the issue to human resources and informed them that he planned to call human resources in the morning. Neither Ms. Allen nor Ms. Peer Malone objected to this course of action. Ms. Allen was scheduled to work the next day and she did not tell Mr. Wall that she had any concerns about working the next day with Mr. Davis.

Mr. Wall left the East Rochester store after 6:00 p.m., at which time the human resources office was closed. Mr. Wall reported the incident to his manager Devin Perkins the next morning as he was driving into work. Mr. Perkins asked Mr. Wall to come into the East Rochester store to continue the investigation into Eric Davis. After arriving at the East Rochester store, Mr. Wall held a meeting with Mr. Perkins and Ms. Allen. A conference call was initiated with Meagan Miles from the human resources department and Ms. Peer Malone, who was not scheduled to work that day. Ms. Peer Malone testified that during that conference call, she reminded Devin Perkins that she had told Mr. Perkins about Eric Davis threatening her with a knife on a prior occasion. When asked about that prior occasion during her trial testimony, Ms. Peer Malone testified that Eric

Davis had threatened her with a box cutter in November 2016. She further testified that because Mr. Wall was in a different store on the day of that incident, she called Mr. Perkins that same day to report that Eric had threatened her. Mr. Perkins asked her if she was okay, and she replied, "No, I am not okay." Yet despite receiving this direct report of Eric Davis threatening Ms. Peer Malone with a weapon, Mr. Perkins took no action whatsoever. He did not report the incident to human resources or to his manager, Nicole Averill, as he was clearly obligated to do under Defendant's Workplace Violence Prevention Policy.

During the January 5, 2017 conference call with Meagan Miles, Ms. Peer Malone stated that she had informed Mr. Perkins of the November 2016 incident. And yet Charter did not open any investigation of Mr. Perkins, took no disciplinary action against him, and did not terminate his employment. Mr. Perkins is a Caucasian male. The disparate treatment accorded to Mr. Wall and Mr. Perkins is certainly sufficient reason for a jury to conclude that Defendant's proffered reason for Mr. Wall's termination was pretextual. Mr. Wall and Mr. Perkins were both informed of incidents where Eric Davis threatened female co-workers with a weapon. Mr. Wall reported the incident on the morning after he learned about it. Mr. Perkins did not report the incident at all. Ms. Miles was informed by Sally Peer Malone that Ms. Peer Malone had reported the threat to Mr. Perkins in November 2016. Mr. Perkins testified at trial that in a meeting with Mr. Wall, Devin Perkins, and Nicole Averill, Mr. Wall himself brought up the issue of Devin Perkins having prior knowledge of Eric Davis threatening Sally Peer Malone with a box cutter, and as Mr. Perkins testified Nicole Averill quickly redirected the focus back to Mr. Wall. Despite Ms. Miles and Ms., Averill that Devin Perkins had failed to report a prior incident of Eric Davis threatening a coworker, no investigation was ever opened into Mr. Perkins' failure to report, while Mr. Wall was terminated. Mr. Perkins was one of the people who investigated Mr. Wall, and testified at trial

that he thought Mr. Wall should be fired for not reporting an incident, even though he knew that he had not reported Eric Davis threatening Sally Peer Malone with a box cutter.

> **B.      Plaintiff Has Presented a Prima Facie Case That He Was Terminated Because of His Disability and That the Alleged Nondiscriminatory Reason for His Termination Was Pretextual**

In order to establish a prima facie case under the Americans with Disabilities Act ("ADA"), plaintiff must show that (1) the employer is subject to the ADA; (2) plaintiff is "disabled" within the meaning of the ADA; (3) plaintiff is otherwise qualified to perform the essential functions of his job with or without reasonable accommodation; and (4) he suffered an "adverse employment action" because of his disability. *Heyman v. Queens Village Committee for Mental Health for Jamaica Community Adolescent Program, Inc*., 198 F.3d 68, 72 (2d Cir. 1999); *Ryan v. Grae & Rybicki, P.C*., 135 F.3d 867, 869-870 (2d Cir. 1998); *Reeves v. Johnson Control World Srvcs., Inc*., 140 F.3d 144, 149-150 (2d Cir. 1998).

Plaintiff can meet his burden under the ADA. First, the parties have stipulated that Defendant is subject to the ADA and that Plaintiff was qualified to perform the essential functions of his job. Plaintiff has also introduced sufficient proof that he was "disabled" within the meaning of both the ADA and the New York State Human Rights Law (NYSHRL).

The ADA defines the term disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." *42 USCS § 12102(1)(A)*. Physical impairment is defined as, "Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." *29 CFR 1630.2 (h)(1)*. "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks,

seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. *42 USCS § 12102(2)(A)*. The ADA further provides that, "The definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act. *42 USCS § 12102(4)(A)*.

Mr. Wall has established that he is a person with a disability. Mr. Wall testified that he was diagnosed with a recurring brain tumor in 2016. He had a craniotomy in April 2016, followed by five weeks of radiation therapy. Mr. Wall took 12 weeks of FMLA leave to receive treatment. He initially returned to work in July 2016, but was only able to work for approximately one week before his doctors told him that he needed to take more time to recover from the tumor, surgery and subsequent radiation treatment. Mr. Wall requested an additional period of leave under the Americans with Disabilities Act and was granted an additional leave.

When Mr. Wall returned from his second leave in September 2016, he was still suffering severe effects, including debilitating migraines, which at their worst would cause him to pass out, and extreme light sensitivity. Mr. Perkins, whose memory was quite vague about many of the matters at issue in this case, testified that he recalled Mr. Wall continuing to experience light sensitivity. Mr. Wall further testified that he was suffering from cognitive impairment, including frequently feeling "fuzzy" and "not as sharp" as he usually was. Mr. Wall still had a healing scar from the craniotomy and the side of his face was black from the radiation treatment as well. These symptoms negatively impacted Mr. Wall's quality of life and his ability to perform his job.

Despite his continuing symptoms, Mr. Wall testified that he was doing his best to "muscle through" his days after returning from medical leave. He discovered that he still had between one and two weeks of accrued vacation time, which per Defendant's policy, had to be used by the end

of the year or would be lost. Mr. Wall made a request to his new manager, Mr. Perkins, that he be allowed to use his earned time before the end of the year. Even after confirming with Meagan Miles that Mr. Wall did indeed have the accrued time, Mr. Perkins refused to let Mr. Wall take the time. Mr. Wall told Mr. Perkins that he needed the time off to deal with his continuing health issues. Mr. Perkins finally told Mr. Wall that he could take his vacation time in December 2016 (one month before Mr. Wall was terminated), but only if Mr. Wall agreed to work from home during that time. This was a highly unusual request and Mr. Wall is unaware of any other employee being made to work from home while taking their earned vacation time. This was evidently not the only time that Mr. Perkins showed insensitivity to persons with disabilities, since he was ultimately terminated by Charter for violating the Americans with Disabilities Act.

"Courts have held that chronic migraine headaches may constitute a disability under the ADA where a plaintiff establishes that his or her migraines limit one or more major life activities." *Hampson v. State Farm Mut. Auto Ins. Co.*, 2015 U.S. Dist. LEXIS 192061, *21, 2015 WL 12733387 (N.D.N.Y. 2015). Mr. Wall's ongoing symptoms, which included severe migraines, qualify as a disability under the ADA. Mr. Wall testified that his ongoing symptoms included passing out and extreme light sensitivity. His cognitive abilities were also impaired, as he testified to. Mr. Wall also meets the less strict definition of a disability under the New York State Human Rights Law. Disability is defined under the New York State Human Rights Law as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques." *NY Exec. L. § 292(21)(a)*. Mr. Wall indisputably was diagnosed with a recurring brain tumor, which Defendant's human resources

employee Meagan Miles admitted to knowing. Mr. Wall testified extensively to his ongoing symptoms and how they affected his job performance.

Mr. Wall has also introduced sufficient proof that he suffered an adverse employment action because of his disability and that Defendant's reason for terminating his employment was pretextual. A jury may reasonably conclude that terminating an employee for prolonged absences caused by a medical condition establishes an inference of discrimination. *See Vives v. New York City Dep't of Corr.*, 2019 WL 1386738 (E.D.N.Y. 2019); *Hampson v. State Farm Mut. Auto Ins. Co.*, 2015 WL 12733387 (N.D.N.Y. 2015). "A plaintiff may show pretext 'by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, [nondiscriminatory] reasons for its action. From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason.'" *Vives,* supra, at *37, *quoting Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 430 (2d Cir. 2016).

Upon his return from medical leave in September 2016, Mr. Wall's manager, who at that time was Charles Casadonte, informed Mr. Wall that he was moving Mr. Wall's base store from East Rochester to Batavia, which was then the furthest store from Mr. Wall's home. Mr. Wall's former base store in East Rochester had a fully set up office with a docking station for his computer, dual monitors, a land line, and printer. The Batavia store did not have any of those necessities. Indeed, it did not even have an office; Mr. Wall had to have a storage closet cleaned out to give him room to set up his laptop. No other standard office equipment was brought into the Batavia store for Mr. Wall to use. Mr. Wall was also written up and given a final written warning, the final step before termination, upon a flimsy pretext within a few weeks of returning from medical leave. Mr. Wall's Caucasian, non-disabled peer, Devin Perkins, was also promoted and

became Mr. Wall's manager during that time, despite having considerably less experience than Mr. Wall.

The testimony presented shows both that Mr. Wall was disabled and that he was treated worse than his similarly situated peers after returning from extensive disability leave. As discussed above, when Mr. Wall was terminated, his immediate manager, the non-disabled, Devin Perkins, was not terminated or even investigated when Sally Peer Malone informed Meagan Miles from Human Resources that Mr. Perkins had been informed of threatening behavior toward Ms. Peer Malone in November 2016. This is certainly sufficient proof for a jury to conclude that the reason for Mr. Wall's termination was pretextual and that the real reason was disability discrimination.

## **CONCLUSION**

Mr. Wall has introduced sufficient proof to meet his burden on both his racial discrimination and disability discrimination claim. For these reasons, in addition to the reasons set forth in Plaintiff's Memorandum of Law in Opposition to Plaintiff's Summary Judgment Motion (Dkt. 66), Defendant's motion should be denied.

Dated: June 30, 2023
      Rochester, New York

                                      BROWN HUTCHINSON LLP

                                      /s/ Kimberly J. Campbell
                                      Michael Cobbs, Esq.
                                      Kimberly J. Campbell, Esq.
                                      Attorneys for Plaintiff, Scotty L. Wall
                                      925 Crossroads Building
                                      Two State Street
                                      Rochester, New York 14614
                                      (585) 454-5050 (phone)
                                      (585) 454-5066 (facsimile)
                                      mcobbs@brownhutchinson.com
                                      kcampbell@brownhutchinson.com

TO:    All Counsel of Record via ECF